Filed 6/16/21  In re Contreras CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| In re | F078975 |
| RUBEN CONTRERAS | (Super. Ct. No. VHC376176) |
| On Habeas Corpus. |  |

## THE COURT[*]

APPEAL from the judgment of the Superior Court of Tulare County.  Nathan D. Ide, Judge.

Rebecca P. Jones, under appointment by the Court of Appeal, for Petitioner.

Xavier Becerra and Rob Bonta, Attorneys General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, Louis M. Vasquez, Lewis A. Martinez, and Amanda D. Cary, Deputy Attorneys General, for Respondent.

-ooOoo-

---

[*]     Before Hill, P.J., Detjen, J. and Peña, J.

**INTRODUCTION**

In 2004, a jury convicted petitioner Ruben Contreras of first degree murder (Pen. Code,[1] § 187), with the special circumstance that the murder was committed during the commission of a robbery (§§ 190.2, subd. (a)(17), 211).[2] (*People v. Contreras* (Apr. 21, 2006, F047366) [nonpub. opn.] (*Contreras*).)[3] For this offense, he was sentenced to a term of life without the possibility of parole. (*Contreras*, F047366.)

In 2019, petitioner filed a petition for resentencing pursuant to section 1170.95.[4] The court summarily denied the petition on the ground that petitioner was a major

---

[1] Undesignated statutory references are to the Penal Code.

[2] Petitioner was convicted of additional offenses, as described below.

[3] We take judicial notice of our prior opinion in petitioner's direct appeal, which was relied on by the trial court and is discussed at length by the parties. (Evid. Code, §§ 452, subd. (a), 459, subd. (a).)

[4] Petitioner filed his resentencing petition on a form petition for writ of habeas corpus, but made clear he was seeking relief pursuant to the procedure outlined in section 1170.95. The court addressed the resentencing petition pursuant to section 1170.95, but continued to caption the petition as one for a writ of habeas corpus and denied it as such. In his notice of appeal, petitioner stated he was appealing from "Denial of Petition to Vacate Conviction & Sentence (Cal.PC § 1170.95)."

In a noncapital case, a habeas petitioner cannot appeal from an order denying relief, but rather must file a new petition in a higher court. (§ 1506; *In re Reed* (1983) 33 Cal.3d 914, 918, fn. 2, overruled on another ground in *In re Alva* (2004) 33 Cal.4th 254, 264; *In re Hochberg* (1970) 2 Cal.3d 870, 875, disapproved on another ground in *In re Fields* (1990) 51 Cal.3d 1063, 1070, fn. 3; cf. § 1509.1; *Briggs v. Brown* (2017) 3 Cal.5th 808, 825.) However, an order granting or denying relief pursuant to section 1170.95 is appealable, pursuant to section 1237, subdivision (b), as an order after judgment affecting a party's substantial rights. (See *People v. Larios* (2019) 42 Cal.App.5th 956, 961, review granted Feb. 26, 2020, S259983 [an "order denying a petition for recall of sentence and resentencing pursuant to . . . section 1170.95 . . . is appealable pursuant to section 1237, subdivision (b), as an order after judgment affecting the substantial rights of the defendant"].)

Regardless of how the matter is titled, petitioner's claims are reviewable by us on the merits. The People do not contend otherwise and have elected to brief the matter as though it were an appeal from the denial of a petition brought under section 1170.95. However, because the instant appeal is from an order styled as an order denying a petition

participant in the underlying felony who acted with reckless indifference to human life, a disqualifying factor pursuant to section 1170.95, subdivision (a)(3). The court also found petitioner ineligible for resentencing on the ground that this court had determined the trial evidence supported a finding that petitioner intended to kill the victim.

Petitioner appeals from the court's denial of his petition. He asserts that his petition was facially sufficient to establish that he fell within the provisions of section 1170.95, and the court therefore erred by failing to appoint counsel and in not affording petitioner the opportunity to present additional argument and evidence at an evidentiary hearing. He further argues the jury's special circumstance finding did not render him ineligible for resentencing, and this court's determination that he had the intent to kill the victim is not dispositive of his petition.

We conclude that any error by the court in failing to appoint counsel was harmless because the jury's special circumstance finding establishes petitioner is ineligible for resentencing as a matter of law. For the same reason, we conclude petitioner was not entitled to an evidentiary hearing. Because this conclusion is dispositive, we do not consider whether the trial court properly concluded that our prior opinion established petitioner had the intent to kill. Accordingly, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

"After a jury trial, [petitioner] was convicted of first degree murder (Pen.Code, []§ 187, subd. (a)), residential robbery (§ 211), and residential burglary (§ 459). The jury found true the special circumstance allegations that the murder was committed during the commission of a burglary and robbery (§ 190.2, subd. (a)(17)), but found not true the personal arming allegation (§ 12022, subd. (b)(1)). The trial court sentenced [petitioner] to a six-year term on the residential robbery conviction and a consecutive indeterminate term of life without the possibility of parole on the murder conviction. A four-year term on the residential burglary conviction was

---

for writ of habeas corpus, we maintain the single title format applicable to habeas corpus proceedings. (Cal. Style Manual (4th ed. 2000) § 6:32.)

3.

imposed and stayed, as was a $2,000 restitution fine imposed pursuant to section 1202.45." (*Contreras*, *supra*, F047366, fn. omitted.)

## A. Factual Background

In petitioner's direct appeal, we summarized the evidence leading to these convictions as follows:

"On June 17, 2001, [petitioner], Carlos E., Jesse L., and Elena Rodriguez went to visit Kelly Hiser and April Crone at the Lindsay Motor Lodge, where they lived. Rodriguez testified that, while the group drank beer behind Hiser's carport, Michael Loveland, a mentally challenged man who also lived at the motel, was collecting cans and bottles nearby from the motel trash bins. Rodriguez bought cigarettes from Loveland, who mentioned that he had marijuana.

"Rodriguez testified that, when Loveland left the carport, [petitioner] said to the group, 'Well, let's fuck him up. Let's fuck him up.' Rodriguez described the statement as having been made in a joking manner. Crone left soon after. About one half hour later, [petitioner] and Carlos left to use the restroom, leaving Rodriguez and Jesse in the carport. Jesse remained for several minutes and left. Rodriguez walked to the front of the motel and talked with Hiser.

"Rodriguez then decided to leave the motel because Carlos, her boyfriend, had left her in the carport. As she walked away, she came across [petitioner], Carlos, and Jesse near some train tracks behind the motel. [Petitioner] was carrying his shirt, and, at trial, Rodriguez described him as 'kind of quiet' and '[k]ind of nervous.' [Petitioner] told the group, 'Whatever happens, whoever goes down goes down alone.' Rodriguez and Carlos then parted company with [petitioner] and Jesse.

"The following day, June 18, [petitioner] went again to the motel to visit Hiser and Crone. Crone testified that she overheard [petitioner] tell Hiser there was 'something wrong' with Loveland and that Loveland would not be coming out of his room. [Petitioner] told Hiser that he had 'cleaned up the whole mess and not to say anything' to the police about his presence at the motel. Hiser testified that [petitioner] told her he thought there was something wrong with 'the man in room 14,' and offered her $50 to keep quiet about his presence at the motel. [Petitioner] then pointed his finger at her as if he were 'firing a gun' at her.

"On June 19, [petitioner] returned to the motel to visit another friend, Phillip Hernandez. [Petitioner] asked Hernandez if he had seen

4.

Loveland around the motel. When Hernandez asked [petitioner] why he was asking, [petitioner] stated, 'Oh, no reason.' [Petitioner] then told Hernandez that Loveland had been stabbed and that [petitioner] believed Loveland was dead, adding, 'I'm in a whole lot of trouble.'

"On June 20, Loveland's mother found his body in his motel room. His VCR, telephone, and jewelry were missing from the room.

"Officers responding to the scene found a large amount of apparent blood spatter around the room. A hammer head was found on the corner of the bed; the hammer handle was located between the dresser and the bed. Shoe tracks were discovered on the stove top under the kitchen window, which led to the back of the motel. Carlos's fingerprints were found on a beer bottle in the room.

"Loveland's body was severely beaten. He suffered three blows to the back of his head and was stabbed four times in the torso. An autopsy determined that he died from severe blunt force trauma to his head.

"Sergeant Kevin Cotton interviewed [petitioner] about Loveland's homicide on the same day the body was discovered. [Petitioner] gave Sergeant Cotton two separate statements. In the first, [petitioner] alleged he met up with 'Jose' and 'Tony' at the motel on June 17, but knew nothing about the murder.

"In his second statement, [petitioner] changed his story and stated he had been at the motel with Carlos, Jesse, and Rodriguez on the night of the murder, drinking beer. [Petitioner] admitted getting some cigarettes from Loveland, who had told the group he had marijuana in his room. [Petitioner] told Sergeant Cotton that, when Loveland left, he and Carlos discussed robbing Loveland for his money and drugs by going into his room to 'knock him out and take his stuff.' According to [petitioner], once in Loveland's room, Loveland offered him marijuana and, as he reached for the pipe, Carlos hit Loveland on the top of the head with a hammer. The hammer broke on impact, at which point Carlos got a baseball bat and proceeded to hit Loveland another five or six times. [Petitioner] watched as Carlos beat Loveland. After Carlos beat Loveland, Jesse walked into the room. Jesse then hit Loveland several times in the torso area where Loveland's stab wounds were found.

"[Petitioner], Carlos, and Jesse then ransacked Loveland's motel room and took the bat, VCR, and marijuana bong. They secured the front door with the security chain and climbed out the kitchen window to the

5.

back of the motel.  [Petitioner] told Sergeant Cotton he felt Loveland's neck for a pulse, but was unable to locate one.

"[Petitioner] admitted to Sergeant Cotton that he had offered Hiser $50 to '[k]eep her mouth shut,' stating he was motivated by 'greed' because he wanted Loveland's marijuana.  [Petitioner] also admitted speaking to Hernandez and telling him of the assault.

**"Defense**

"At trial, [petitioner's] defense was that he did not actually agree to rob Loveland, and was thus not guilty of the felonies underlying the felony murder charge.  Instead, [petitioner] testified that he believed Carlos was joking when he asked him if he wanted to rob Loveland for his marijuana, and he jokingly agreed.  One half hour later, the two went to Loveland's motel room to use the restroom.  Before entering, Carlos again asked him if he wanted to rob Loveland.  When [petitioner] declined, Carlos grabbed him by the shirt collar and told him, ' "You're going to help me take his shit or I'm going to fuck you up." '  Carlos 'more or less' pushed [petitioner] through the front door of Loveland's room.

"[Petitioner] testified that, once in the room, he used the restroom. When he came out, [petitioner] smoked the pipe offered him by Loveland. While [petitioner] was smoking, Carlos got up from his chair and hit Loveland on the top of the head with a hammer.  The hammer broke, so Carlos got a baseball bat and continued to hit Loveland about five times on the head.  [Petitioner] was 'shocked' and 'stunned,' but did not do anything during the attack.  Afterwards, Carlos ransacked Loveland's room and took some of his belongings.

"Jesse then walked into the motel room and punched Loveland several times in the torso.  [Petitioner] did not say anything while Jesse punched Loveland.  [Petitioner] tried to find a pulse on Loveland's neck, but couldn't.  The three climbed out the kitchen window.  Carlos was carrying a bat and either Jesse or Carlos had Loveland's VCR.

"[Petitioner] testified that he did not call the police because he did not want to be labeled a 'rat.'  [Petitioner] denied taking any of Loveland's property.  He acknowledged lying to Sergeant Cotton when he was first questioned because he did not 'want to be a rat at first.'  [Petitioner] testified that he did not know Carlos was going to beat Loveland with the hammer and bat, and he hoped Carlos was not actually going to rob Loveland.

6.

"On cross-examination, [petitioner] acknowledged that he told investigating officers a number of times that he went into Loveland's motel room with the intent to rob him, but claimed to have said this 'so they wouldn't think [he] was lying.' [Petitioner] did not tell Sergeant Cotton that Carlos had threatened him before they went into Loveland's room, claiming he did not want to get into 'more trouble.' He acknowledged telling Sergeant Cotton that he had ransacked Loveland's room but, at trial, testified that he did not actually do so. He also agreed with Sergeant Cotton's suggestion that he had been looking for 'weed or money' in Loveland's room. At trial, [petitioner] responded that he had agreed because '[t]hat's what you look for in a robbery.'

"Dr. Madeline Daniels, a forensic psychologist, interviewed [petitioner] in jail and conducted numerous tests on him. She determined that [petitioner] was learning impaired, he had attention deficit hyperactivity disorder, and he had a dependent personality disorder. He also suffered from an anxiety disorder, methamphetamine abuse, and possible posttraumatic stress disorder. Dr. Daniels testified that [petitioner's] involvement in the crimes was consistent with his personality disorder, but she could not discern whether his involvement was because he was afraid of Carlos or because he did not want to appear weak to his friends.

"On cross-examination, Dr. Daniels acknowledged that [petitioner] had no indications of obsession, compulsion, phobias, delusions or hallucinations, and his IQ was in the average range." (*Contreras*, *supra*, F047366.)

B. **Direct Appeal**

In his direct appeal, petitioner argued the court erred in failing to give a duress instruction (CALJIC No. 4.40), failing to give an introductory instruction regarding the special circumstance (CALJIC No. 8.80.1), declining to stay the sentence on his robbery conviction (§ 654), and imposing a parole revocation fine (§ 1202.45). (*Contreras*, *supra*, F047366.) This court agreed the parole revocation fine was inapplicable and ordered the abstract of judgment amended to remove the fine, but otherwise affirmed. (*Ibid.*)

Relevant here, this court concluded petitioner was not prejudiced by the court's failure to give CALJIC No. 8.80.1, "which defines (1) the mental state required for a

7.

felony-murder special circumstance when the defendant is not the actual killer; (2) the prosecution's burden of proof as to the special circumstance; and (3) the requirement that the jury agree unanimously as to whether the special circumstance is true or untrue." (*Contreras*, *supra*, F047366.) We stated as follows: "Because it can be inferred from the jury's finding on the personal use allegation that the jury believed [petitioner] was not the actual killer, we next look to see if the evidence demonstrates that [petitioner] had either (1) an 'intent to kill' or (2) aided and abetted the robbery as a 'major participant' and acted with 'reckless indifference to human life,' as required under the special circumstance finding. (§ 190.2, subds. (c), (d).)" (*Ibid.*) We then stated, "[W]e find that no reasonable jury, properly instructed, would have failed to find [petitioner] acted with reckless indifference to human life and was a major participant in the robbery." (*Ibid.*) After summarizing the evidence relevant to that conclusion, we explained, "[Petitioner's] statements to Sergeant Cotton and his own testimony at trial show that, even if he was not the actual killer, and even if his intent to kill was not resolved under other properly given instructions, he was a major participant in the robbery and burglary and his actions demonstrated a reckless indifference to human life." (*Ibid.*)

With regard to petitioner's claim that his sentence for robbery should have been stayed pursuant to section 654, this court stated, "[W]e disagree with [petitioner] that no substantial evidence sustains the court's implicit determination that he held more than one objective when he committed the crimes against Loveland. Rather, the evidence supports a finding of separate intents to both kill and rob Loveland." (*Contreras*, *supra*, F047366.) We further noted, "While the jury did not find appellant personally used the bat, hammer or knife, the court was free to determine that appellant, as an aider and abettor, had the same intent to kill Loveland." (*Ibid.*)

## C.    Petition for Resentencing

On February 7, 2019, petitioner filed a petition for writ of habeas corpus, seeking resentencing pursuant to section 1170.95. In the form petition, petitioner stated that a

complaint, information, or indictment was filed against him that allowed him to be prosecuted under a theory of felony murder; he was convicted of first degree murder at trial; and he could not be convicted of first or second degree murder because of changes to section 188 or 189.

On February 20, 2019, the court summarily denied the petition as follows:

"In order to be eligible for relief under [section] 1170.95, Petitioner must satisfy all three preliminary conditions under [section] 1170.95(a). The third condition, [section] 1170.95(a)(3), requires that the petitioner could not be convicted of first or second degree murder because of changes to Section 188, or 189. Petitioner does not satisfy this third requirement, because he could have been convicted under revised [section] 189(e)(3). That section states, for the felonies listed in [section] 189(a) (first degree eligible crimes), Petitioner would be liable for murder if the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2. In the present case, not only could Petitioner have been convicted under [section] 189(e)(3) based upon the facts of this case, the Fifth District Court of Appeal has already affirmatively found Petitioner was a major participant in the underlying crime, and acted with reckless indifference to human life. As stated by the Court of Appeal, 'Because it can be inferred from the jury's finding on the personal use allegation that the jury believed [petitioner] was not the actual killer, we next look to see if the evidence demonstrates that [petitioner] had either (1) an "intent to kill" or (2) aided and abetted the robbery as a "major participant" and acted with "reckless indifference to human life," as required under the special circumstances finding.' [Citation.]

"In addressing these two issue[s], the Fifth District Court of Appeal stated, 'Similarly here, we find that no reasonable jury, proper[l]y instructed, would have failed to find [petitioner] acted with reckless indifference to human life and was a major participant in the robbery.' [Citation.] 'Appellant's statements to Sergeant Cotton and his own testimony at trial show that, . . . he was a major participant in the robbery and burglary and his actions demonstrated a reckless indifference to human life. In sum, we find the instructional error harmless in this case.' [Citation.]

"As to the intent to kill factor, the Fifth District has already found that Petition[er] had the requisite intent to kill under the murder statutes.

9.

'Rather, the evidence supports a finding of separate intents to both kill and rob Loveland.' [Citation.]

"Because the Fifth District Court of Appeal has already made findings in Petitioner's case, Petitioner is not eligible for relief because Petitioner harbored the intent to kill by aiding and abetting the actual killer in the commission of the murder, and was a major participant in the underlying felony who acted with reckless indifference to human life. Petitioner has failed to make a prima facie showing that he is entitled to relief.

"Petitioner's Writ of Habeas Corpus is therefore denied as a matter of law."

This timely appeal followed.

## **DISCUSSION**

### I.  **Senate Bill No. 1437 (2017-2018 Reg. Sess.) and Section 1170.95**

" 'Effective January 1, 2019, Senate Bill [No.] 1437 amended murder liability under the felony-murder and natural and probable consequences theories.' " (*People v. Daniel* (2020) 57 Cal.App.5th 666, 672, review granted Feb. 24, 2021, S266336 (*Daniel*).)  The bill accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)  First, to amend the natural and probable consequences doctrine, " '[t]he bill redefined malice under section 188 to require that the principal acted with malice aforethought.  Now, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)' " (*Daniel*, at p. 672; accord, *Gentile*, at pp. 842-843.)  Second, to amend the felony-murder rule, the bill added section 189, subdivision (e):

"A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless

indifference to human life, as described in subdivision (d) of Section 190.2."[5]  (§ 189, subd. (e); accord, *Gentile*, at p. 842.)

Finally, the bill "added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above." (*Gentile*, at p. 843.)

"Section 1170.95 lays out a process for a person convicted of felony murder or murder under a natural and probable consequences theory to seek vacatur of his or her conviction and resentencing.  First, the person must file a petition with the trial court that sentenced the petitioner declaring, among other things, that the petitioner 'could not be convicted of first or second degree murder because of changes to Section 188 or 189.' (§ 1170.95, subd. (a)(3); see § 1170.95, subd. (b)(1)(A).)  Then, the trial court must 'review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of th[e] section.'  (§ 1170.95, subd. (c).)  If so, the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and to resentence the petitioner on any remaining counts. (§ 1170.95, subds. (c), (d)(1).)  At the hearing, the prosecution must 'prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.'  (§ 1170.95, subd. (d)(3).)  'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.'  (*Ibid.*)" (*Gentile*, *supra*, 10 Cal.5th at p. 853.)

"Since Senate Bill [No.] 1437 was adopted and its mechanism for retroactive application has come into play through the filing of section 1170.95 petitions, many questions have arisen about that process and percolated up through appeals from resentencing decisions." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 811, fn.

---

[5]    Additionally, section 189 was amended to allow for felony-murder liability where the victim is a peace officer.  (§ 189, subd. (f); accord, *Daniel*, *supra*, 57 Cal.App.5th at p. 672, review granted.)

11.

omitted.) Those questions pertain primarily to section 1170.95, subdivision (c) (hereinafter sometimes referred to as "subdivision (c)"), which "addresses the procedure by which a trial court determines whether the petitioner is entitled to an evidentiary hearing." (*People v. Cooper* (2020) 54 Cal.App.5th 106, 114, review granted Nov. 10, 2020, S264684 (*Cooper*).) Section 1170.95, subdivision (c) provides in full:

> "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor['s] response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

Courts of Appeal are divided on several questions arising under subdivision (c). Relevant here, the Courts of Appeal are split regarding when the right to counsel arises under subdivision (c). Our Supreme Court has granted review to decide this question. (See *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598 (*Lewis*).) In the meantime, a court has held that the right to counsel attaches immediately upon the filing of a facially sufficient petition that includes all the information required under section 1170.95, subdivision (b). (*Daniel*, *supra*, 57 Cal.App.5th at p. 673, review granted; *Cooper*, *supra*, 54 Cal.App.5th at pp. 109, 114, review granted.) That court construed the first sentence of subdivision (c) to state a general rule, with the rest of the subdivision establishing a process for complying with that rule: " 'Appoint counsel, if requested. Wait for the prosecutor's required response and the petitioner's optional reply. If the petitioner makes a prima facie showing, issue an order to show cause.' " (*Cooper*, at p. 115.)

Other courts have read the two references to a "prima facie showing" in the first and fifth sentences of subdivision (c) as requiring two different prima facie reviews – one

to determine whether the petitioner "falls within the provisions" of the statute and one to determine whether the petitioner is "entitled to relief" – with each review to occur at a different chronological point in time. (*Lewis*, *supra*, 43 Cal.App.5th at p. 1140, review granted; see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328-333, review granted Mar. 18, 2020, S260493 (*Verdugo*).) Under this reading of the statute, courts have concluded that a petitioner is entitled to counsel (as well as the other procedures provided for under subd. (c)) only after the trial court determines the petitioner has made the threshold showing required to satisfy the first prima facie review. (*Lewis*, at p. 1140; *Verdugo*, at p. 332.)

Courts of Appeal also are divided on the question of whether a trial court may look beyond a facially sufficient petition to determine whether a defendant has made a prima facie showing that he or she falls within the provisions of the statute and is entitled to relief. Our Supreme Court also granted review to decide this question in *Lewis*, *supra*, 43 Cal.App.5th 1128. In the meantime, some courts have held that a trial court may examine the petition, as well as the court's own files, the record of conviction, or an appellate court opinion from the petitioner's direct appeal. (*Lewis*, at p. 1138, review granted; see *Verdugo*, *supra*, 44 Cal.App.5th at p. 333, review granted.) Another court has held that a trial court may not rely on the record of conviction to deny a facially sufficient petition, and instead may only rely on the record of conviction to deny a petition "*after* deeming it facially sufficient, appointing counsel, and receiving briefing from the parties." (*Daniel*, *supra*, 57 Cal.App.5th at p. 677, review granted; see *Cooper*, *supra*, 54 Cal.App.5th at pp. 125-126, review granted.)

## II.     Petitioner is Ineligible for Resentencing

Petitioner contends the trial court erred by summarily denying his facially sufficient petition without appointing counsel or requiring the parties to brief the issue of his eligibility for relief under the procedures set out in section 1170.95, subdivision (c). We conclude we need not resolve whether the facially sufficient petition gave rise to

petitioner's right to appointed counsel and other procedural rights under subdivision (c) because the error here, if any, was harmless. This is because the jury's special circumstance finding establishes that petitioner is ineligible for resentencing as a matter of law.

Section 189, as amended by Senate Bill No. 1437 (2017-2018 Reg. Sess.), now permits a felony-murder conviction only when specified facts relating to the defendant's individual culpability have been proved. Among such circumstances, a felony-murder conviction is permissible if the defendant was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of section 190.2. (§ 189, subd. (e).) Here, the jury found true a felony-murder special circumstance pursuant to section 190.2, subdivision (a)(17), which imposes a sentence of death or life without the possibility of parole for a murder committed during the commission, or attempted commission, of a robbery. (§ 190.2, subd. (a)(17).) (*Contreras*, *supra*, F047366.) To make such a finding, the jury was required to find that petitioner acted "with reckless indifference to human life and as a major participant" in aiding or abetting the commission of the underlying felony. (§ 190.2, subd. (d); *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 419.) The jury therefore made the findings necessary to sustain a felony-murder conviction under section 189, as amended by Senate Bill No. 1437 (2017-2018 Reg. Sess.). Petitioner is ineligible for resentencing under section 1170.95 as a matter of law, and he was not prejudiced by the trial court's failure to appoint counsel or afford petitioner the other procedures outlined in subdivision (c).**6** (See *Daniel*, *supra*, 57 Cal.App.5th at p. 676, review granted [the

---

**6** Petitioner does not argue it was impermissible for the trial court to rely on the appellate court opinion in determining whether he made a prima facie case for relief, only that the court could not do so without first appointing counsel and requesting further briefing. As indicated above, the issue of whether the trial court may consider the record of conviction in determining whether a petitioner has made a prima facie showing of eligibility for relief under section 1170.95 is currently pending before our Supreme

14.

petitioner bears the burden of showing it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing]; see also *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Nonetheless, petitioner additionally argues that the special circumstance finding, standing alone, is insufficient to render him ineligible for resentencing as a matter of law. In support, he relies on *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), both decided more than 10 years after his conviction. "*Banks* and *Clark* 'clarified "what it means for an aiding and abetting defendant to be a 'major participant' in a crime who acted with a 'reckless indifference to human life.' " ' [Citation.] *Banks* identified certain factors to consider in determining whether a defendant was a major participant; *Clark* identified factors to guide the determination of whether the defendant acted with reckless indifference to human life." (*People v. Gomez* (2020) 52 Cal.App.5th 1, 13, fn. 5, review granted Oct. 14, 2020, S264033 (*Gomez*).) Courts of Appeal are split on the question of whether a special circumstance finding entered prior to *Banks* and *Clark* renders a petitioner ineligible for section 1170.95 resentencing relief as a matter of law (see *People v. Jones* (2020) 56 Cal.App.5th 474, 478-479 [collecting cases], review granted Jan. 27, 2021, S265854 (*Jones*)), and our Supreme Court has granted review to decide the issue (*People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted Mar. 10, 2021, S266606).

---

Court. (*Lewis*, *supra*, 43 Cal.App.5th 1128, review granted.) In the meantime, however, the Courts of Appeal appear to be in an agreement that, at the very least, the trial court may rely on the record of conviction to "deny a petition *after* deeming it facially sufficient, appointing counsel, and receiving briefing from the parties" (*Daniel*, *supra*, 57 Cal.App.5th at p. 677, review granted), particularly where the court's review of that record is "limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion . . . ." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980.) We therefore consider the appellate opinion in petitioner's prior appeal, to the extent it states the convictions on which he was convicted, in determining whether petitioner was prejudiced by the court's summary denial of his petition.

Courts which have held that a pre-*Banks* and *Clark* felony-murder special-circumstance finding bars section 1170.95 resentencing relief have reasoned that *Banks* and *Clark* merely clarified the law as it always was. (*Jones*, *supra*, 56 Cal.App.5th at pp. 482, 484, review granted; accord, *People v. Nunez* (2020) 57 Cal.App.5th 78, 92, review granted Jan. 13, 2021, S265918; *People v. Allison* (2020) 55 Cal.App.5th 449, 458.) These courts further note that our Supreme Court does not require juries to be instructed on the *Banks* and *Clark* clarifications. "Rather, while CALCRIM No. 703 now includes *optional* language drawn from *Banks* and *Clark* regarding the factors a jury *may consider*, '[t]he bench notes to the instruction state that *Banks* "stopped short of holding that the court has a sua sponte duty to instruct on those factors," and *Clark* "did not hold that the court has a sua sponte duty to instruct on those factors." ' " (*Nunez*, at pp. 92-93; accord, *Jones*, at p. 484; *Allison*, at pp. 458-459.) Thus, these courts found "no basis to conclude as a general matter that a pre-*Banks* and *Clark* jury was instructed differently than a post-*Banks* and *Clark* jury, or resolved different factual issues, answered different questions, or applied different standards." (*Nunez*, at p. 94.)

These courts have also held that an attack on a special circumstance finding in a section 1170.95 proceeding effectively constitutes a collateral attack on the judgment. (*People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142, review granted Oct. 14, 2020, S264284; *Gomez*, *supra*, 52 Cal.App.5th at p. 16, review granted.) According to these courts, a petitioner who wishes to argue the special circumstance finding is invalid under current law must first seek to invalidate that finding through a petition for writ of habeas corpus before seeking resentencing pursuant to section 1170.95. (*Galvan*, at p. 1142; *Gomez*, at p. 17; *Jones*, *supra*, 56 Cal.App.5th at p. 485, review granted.) These courts reason that a contrary interpretation "would read into section 1170.95 a new procedure allowing petitioners to ignore a special circumstance finding—no matter how well supported in the record—as well as the recognized method of challenging it. Such petitioners would be allowed to relitigate a prior jury finding at an evidentiary hearing

16.

where the prosecution bears the burden of proving the truth of the finding, beyond a reasonable doubt, a second time." (*Jones*, at p. 485.)

On the other hand, courts that have found a special circumstance finding insufficient to render a petitioner ineligible for relief have reasoned that *Banks* and *Clark* "construed section 190.2, subdivision (d) in a significantly different, and narrower manner than courts had previously construed the statute." (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1179, review granted June 24, 2020, S262011; accord, *People v. Harris* (2021) 60 Cal.App.5th 939, 958, review granted Apr. 28, 2021, S267802.) Thus, these courts surmised that a petitioner with a pre-*Banks* and *Clark* special circumstance finding may have been convicted based on "conduct that is not prohibited by section 190.2 as currently understood." (*Torres*, at p. 1180; accord, *Harris*, at p. 958; *People v. York* (2020) 54 Cal.App.5th 250, 258, review granted Nov. 18, 2020, S264954; *People v. Smith* (2020) 49 Cal.App.5th 85, 93, review granted July 22, 2020, S262835.) To the extent the jury's finding on a felony-murder special circumstance is legally insufficient under *Banks* and *Clark*, it cannot refute a prima facie showing of entitlement to resentencing relief. (*People v. Secrease* (2021) 63 Cal.App.5th 231, 256.) Accordingly, in considering whether a petitioner is entitled to relief pursuant to section 1170.95, the trial court must first determine whether "the evidence presented at trial was sufficient to support the felony-murder special-circumstance finding under *Banks* and *Clark*." (*Secrease*, at p. 264.)

We find more persuasive those cases holding that a special circumstance finding precludes relief as a matter of law. *Banks* and *Clark* did not state a new rule of law. Rather, they relied on the United States Supreme Court's decisions in *Enmund v. Florida* (1982) 458 U.S. 782 and *Tison v. Arizona* (1987) 481 U.S. 137 to clarify principles that had long been in existence at the time petitioner was convicted. (See *In re Miller* (2017) 14 Cal.App.5th 960, 978; accord, *People v. Allison*, *supra*, 55 Cal.App.5th at p. 458; *Gomez*, *supra*, 52 Cal.App.5th at p. 13, fn. 5, review granted.) *Enmund* prohibited

17.

felony-murder liability for a defendant that "did not commit the homicide, was not present when the killing took place, and did not participate in a plot or scheme to murder," and explained that, to be liable for felony murder, the aider and abettor must himself "kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." (*Enmund*, at pp. 795, 797.) *Tison* held that, "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." (*Tison*, at pp. 151, 158.) As *Banks* noted, this language from *Tison* was later codified by the California electorate in section 190.2, subdivision (d). (*Banks*, *supra*, 61 Cal.4th at p. 800.) To the extent *Banks* and *Clark* illuminated factors a fact finder might consider in determining whether a defendant was a major contributor who acted with reckless indifference to human life, they drew those factors from *Edmund* and *Tison.* (See *Banks*, at pp. 801, 803; see also *Clark*, *supra*, 63 Cal.4th at pp. 615, 618-623.) These principles existed when petitioner was convicted and, absent a determination on direct appeal or in habeas that the evidence was insufficient to support the jury's finding, there is no basis to conclude petitioner's jury applied different standards than those described in *Banks* and *Clark*.

Finally, we reject petitioner's assertion that the summary denial of his petition violated his constitutional rights to due process and to counsel. To the extent a petitioner has a right to counsel prior to the issuance of an order to show cause, that right is statutory, not constitutional, and is susceptible to review for prejudice. (*Daniel*, *supra*, 57 Cal.App.5th at pp. 674-676, review granted; accord, *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1114-1115, review granted Nov. 13, 2019, S258175 [the retroactive relief afforded by Senate Bill No. 1437 (2017-2018 Reg. Sess.) " 'is not subject to Sixth Amendment analysis' "]; see *People v. Perez* (2018) 4 Cal.5th 1055, 1063-1064.) As we have already explained, petitioner was not prejudiced by the court's denial of his petition. Moreover, due process is implicated when the state attempts to deprive a defendant of some liberty interest. (*Hewitt v. Helms* (1983) 459 U.S. 460, 466, abrogated on another

18.

point by *Sandin v. Conner* (1995) 515 U.S. 472, 483, fn. 5.)  But petitioner is "categorically ineligible for relief under section 1170.95."  (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 908, review granted Aug. 12, 2020, S263219.)  He thus had no liberty interest in any of the procedures afforded by section 1170.95, subdivision (c).  (See *Tarkington*, at p. 908.)

In sum, we conclude that petitioner is ineligible for relief as a matter of law, and any error in failing to appoint counsel or follow the procedures outlined in section 1170.95, subdivision (c) was harmless.  (*Daniel*, *supra*, 57 Cal.App.5th at p. 677, review granted; accord, *People v. Law* (2020) 48 Cal.App.5th 811, 826, review granted July 8, 2020, S262490 [any error in failing to appoint counsel was harmless because counsel would not have been able to demonstrate petitioner was eligible for resentencing]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 675, review granted July 8, 2020, S262481 [any error in failing to appoint counsel was harmless because petitioner did not fall within the provisions of § 1170.95 as a matter of law].)  In light of this conclusion, we do not address petitioner's contention that the court erred in relying on the statement, contained in our prior opinion, suggesting that substantial evidence supported a finding that petitioner intended to kill the victim.  (See *Contreras*, *supra*, F047366.)

## DISPOSITION

The order is affirmed.